UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT POCEVIC | : | |
| | : | PRISONER |
| v. | : | Case No. 3:04CV1067(CFD) |
| | : | |
| MINGZER TUNG | : | |
| JOAN DOBSON | : | |
| FRED WATTON | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Robert Pocevic ("Pocevic") is a prisoner confined at the State of Connecticut Garner Correctional Institution ("Garner"). He filed this civil rights action pro se pursuant to 28 U.S.C. § 1915. He alleges that the defendants were deliberately indifferent to his need for medical treatment and pain caused by kidney stones. The Defendants are Mingzer Tung (a physician at Garner), Joan Dobson (a nursing supervisor at Garner), and Fred Watton (a health services administrator at Garner). Defendants have filed a motion for summary judgment. For the reasons that follow, defendants' motion is granted.

I.  Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). A party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

      Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Facts[1]

Pocevic was convicted of murder in the Connecticut Superior Court and is serving a forty-year sentence. Shortly after his arrest, Pocevic began having suicidal thoughts and was transferred to the mental health unit at Garner Correctional Institution ("Garner").

Pocevic also has a history of kidney stones which preceded his incarceration for this offense. As indicated by the affidavits of Drs. Tung and Blanchette, which are attached to Defendants' Local Rule 56(a)(1) Statements, the most common treatment for kidney stones is "conservative, expectant treatment," that is, the doctor waits to see if the pain subsides, thereby indicating that the patient has passed the stone. During this time, the patient is encouraged to increase fluid intake to flush out the kidney stone. This procedure generally is followed for kidney stones less that 5mm in diameter. These stones generally pass within two weeks and require no medical intervention other than pain medication. While in the kidney, stones are not painful. The patient experiences pain when the stone leaves the kidney and travels down the ureter. The pain of passing a kidney stone can be severe.

Prior to this incarceration, Pocevic experienced kidney stone pain on two occasions and obtained treatment from urologists associated with Bridgeport Hospital. In 1996, while incarcerated at Osborn Correctional Institution, Pocevic again experienced kidney stone pain.

---

[1] The facts are taken from defendants' Local Rule 56(a)1 Statement [doc. #27-2] with attached exhibits and the affidavits of Drs. Mingzer Tung [doc. #27-3] and Edward Blanchette [doc. #27-4] and plaintiff's Local Rule 56(a)2 Statement [doc. #33-3], affidavit [doc. #33-2] and exhibits [doc. #34].

After receiving intravenous fluids in the infirmary for nearly one month, he returned to the cell block and passed the stone.

During his current period of incarceration, Pocevic first advised the medical department of his history of kidney stones and difficulty urinating on May 13, 2003. The following day, Dr. Giarrantana (a correctional physician) determined that Pocevic's urine contained blood. Dr. Giarrantana advised Pocevic to increase his fluid intake and screen all urine. Pocevic concedes, however, that, while he was confined in the inpatient mental health unit at Garner, he only drank the beverages served with his meals.

Dr. Giarrantana also prescribed Tylenol #3 for pain, but instructed staff to hold the medication unless Pocevic complained of pain. As a correctional physician, Dr. Giarrantana has an obligation to prevent inmate abuse of narcotic medications, especially by inmates like Pocevic, with prior substance abuse problems. Two days later, Pocevic requested Tylenol #3 because his kidney stones were acting up. The nurse provided the medication, but noted that Pocevic did not appear to be in acute distress.

Although Pocevic was seen on an almost daily basis by mental health or medical staff, he made no complaints of kidney stone pain for the following two months. In mid-June 2003, he was prescribed Tylenol #3 for tooth pain following an extraction. On June 19, 2003, Pocevic complained of urinary delay. Medical staff questioned whether the condition was caused by his medication or kidney stones. On June 27, 2003, Pocevic's psychiatrist determined that medication may have caused the urinary delay and discontinued Pocevic's prescription for Zoloft.

4

Although Pocevic states in his affidavit attached to his summary judgment response that he complained of kidney stone pain to Dr. Tung every time he was examined, his assertion is not supported by the copy of his medical records that Pocevic provided.  He did complain of pain in his right abdomen on July 21, 2003.  Dr. Tung observed then, however, that Pocevic was not in acute distress and noted no abdominal tenderness.  Thus, he did not prescribe any medication for abdominal pain at that time.

On July 28, 2003, Pocevic told defendant Tung that he was unable to urinate normally.  Although Pocevic states that he told Dr. Tung that he was also experiencing excruciating pain, the medical records indicate that Pocevic was "alert and oriented, did not complain of any pain, did not appear to be in acute distress and had a normal gait."  Because Pocevic attributed his difficulty urinating to the medication Zoloft, Dr. Tung referred Pocevic to his psychiatrist.  Two days later, Pocevic was observed reading in his cell.  He was calm, quiet and pleasant and did not appear in the acute pain that accompanies a kidney stone attack.

In August 2003, Dr. Tung saw Pocevic three times.  Pocevic's medical records indicate that, on August 4, 2003, Dr. Tung reviewed a May 27, 2003 x-ray which showed a left kidney stone.  The record shows that Pocevic was not then experiencing pain at this time or during the other two visits.  Dr. Tung recommended that Pocevic increase his fluid intake and return to the clinic if needed.  Although Pocevic states in his affidavit that he was sent to the medical unit because he was experiencing severe pain and, on one of the days, because he thought he had passed a kidney stone, these assertions are not supported by the medical records or any other objective evidence.

5

Medical records indicate that Pocevic made no complaints of kidney stone pain from August through November 2003. Again, Pocevic disputes the records in his affidavit, stating that he complained of pain once in September and once in October.

On December 30, 2003, Pocevic complained to Dr. Tung that he believed he had a kidney stone. Although Pocevic states that he then told Dr. Tung that he was in severe pain, the medical records indicate that Pocevic's "gait was normal and he appeared in no apparent distress." Dr. Tung ordered that Pocevic's urine be analyzed. When the laboratory results indicated that there was a moderate amount of blood and white blood cells in Pocevic's urine, Dr. Tung prescribed medication to rule out a urinary tract infection, directed Pocevic to increase his fluid intake and advised him to return to sick call if needed.

Although Pocevic was seen by medical and mental health staff on numerous occasions from January through March 2004, medical records indicate that he did not complain again about kidney stone pain until March 29, 2004. Pocevic disputes the accuracy of these medical records. He also states in his affidavit that he pleaded with correctional staff to send him to the medical unit every day from March 22 through 29, 2004, but Dr. Tung refused to see him about his complaints of severe pain. Medical records for March 29, 2004 indicate, however, that Pocevic's gait was normal and Pocevic did not appear to be in acute distress. Dr. Tung requested a urine sample, but Pocevic stated that he could not provide one at that time. Although Pocevic was held in the waiting room for nearly two hours, he continued to report that he could not provide a urine sample. During that time, the record reflects that Pocevic was observed socializing with other inmates and was in no apparent distress. Despite the absence of objective

6

signs of pain, Dr. Tung prescribed Tylenol for ten days to alleviate the discomfort and indicated that he would follow up if required by the results of the urine analysis.

The affidavits of Drs. Tung and Blanchette state that correctional physicians are aware that, in the past, drug-seeking inmates with kidney stones have altered their urine samples by, for example, scratching themselves and putting blood in the samples. They hope that the presence of blood in their urine will result in a prescription for pain medication. To prevent alteration of urine samples, the physicians often require the inmates to remain in the medical unit until they can produce a urine sample under observation.

Pocevic states that he provided witnessed urine samples on March 30 and April 1, 2004. The medical records, however, contain no reference to a March 30 urine sample and indicate that Pocevic provided an unwitnessed urine sample on April 1, 2004.

Upon testing, the April 1, 2004 sample was found to contain a high amount of hemoglobin. Upon reviewing the results, Dr. Tung noted that someone with this amount of blood in his urine should have been more symptomatic than Pocevic, and suspected that the urine sample had been altered. Despite this concern, to rule out a kidney stones with a mild urinary tract infection, Dr. Tung prescribed antibiotics and Tylenol #3 for five days for pain and recommended increased fluid intake.

Dr. Tung continued to treat Pocevic through August 19, 2004. Although Pocevic's urine was tested approximately once a month, at no time during this period did Pocevic provide a witnessed urine sample. The medical records indicate that, although Pocevic frequently told medical staff that he was experiencing pain, staff observations did not support his claims. For

example, on April 23, 2004, Pocevic told a nurse that he had been experiencing pain since the night before. Although Pocevic was playing cards and did not appear to be in distress, the nurse contacted defendant Dobson, who then contacted the on-call doctor. In May 2004, Pocevic complained to Dr. Tung that he had a kidney stone and that Motrin helped ease the pain. Dr. Tung observed, however, that Pocevic appeared in no discomfort and was able to walk with a normal gait. In June 2004, Pocevic was seen by medical staff for complaints of right shoulder discomfort as a result of falling during an outside football game. Although Pocevic states that he then complained of pain from kidney stones, there is no reference to kidney stone pain in the medical records. Drs. Tung and Blanchette both opine that a person experiencing kidney stone pain would be unable to play football. Despite the unwitnessed urine samples and lack of observable indications of pain, Pocevic was prescribed pain medication on several occasions.

A September 30, 2004 x-ray revealed stones in both kidneys. Dr. O'Halloran (another correctional physician) submitted a request to the Utilization Review Committee ("URC") for a urology consult for lithotripsy.[2] The request was denied on October 12, 2004.

In November 2004, Pocevic complained to Dr. O'Halloran of blood in his urine and flank pain. On the same day, he reported to the correctional officer and nurse that he was experiencing severe pain. The nurse noted that Pocevic was tearful from the pain, called the on-call physician and received an order for an injection of pain medication. The following day, Dr. O'Halloran updated his URC request indicating that Pocevic had been experiencing constant pain for two weeks. The request was approved and Pocevic saw a urologist on November 23, 2004. The

---

[2] Lithotripsy is explained infra in the text.

urologist noted that Pocevic reported intermittent right-side pain that suggested renal colic. Upon examination, Pocevic appeared healthy with no evidence of abnormality.

A November 23, 2004 x-ray revealed a large stone in the right kidney and two small stones in the left kidney. The following day, the URC approved Extracorporeal Shock Wave Lithotripsy ("ESWL"). The procedure uses shock waves to break the kidney stone into smaller pieces that may be passed through the ureter. Pocevic underwent several ESWL procedures between December 2004 and May 2005 and passed many kidney stone fragments.

Pocevic's allegations are principally directed at Dr. Tung for his claimed indifference to his kidney stone problems. The complaint also alleges that Dobson did not "correct Tung's misconduct" and "made no effort to obtain proper medical care." As to Watson, Pocevic claims he also failed to correct Tung's indifference and to obtain proper care for him.

III.   Discussion

Defendants raise two grounds in support of their motion for summary judgment: Pocevic cannot show that defendants were deliberately indifferent to his medical condition and defendants are protected by qualified immunity.

   A. Deliberate Indifference to a Serious Medical Need

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, Pocevic must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to his serious medical need. Id. at 106.

9

He must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See id. at 104-05

Mere negligence will not support a section 1983 claim; "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation," id.; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (holding that treating physician is liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind.").

Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). See also Nance v. Kelly, 912 F.2d

605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, Pocevic also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The judgment of prison doctors is presumed valid unless the prisoner provides evidence that the decision was "such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990). See also Sond v. St. Barnabus Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (stating that federal courts are "hesitant to second guess medical judgments" and afford determinations of

medical providers a "presumption of correctness") (citations and internal quotation marks omitted).

Claims regarding "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention" implicate medical judgment. Id.  Thus, the claims are at most negligence claims involving medical malpractice and not the subject of a section 1983 action. See id. (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)).  In addition, claims involving delayed treatment as a result of a faulty diagnosis or an incorrect calculation of the associated risks and costs or a decision not to provide treatment based on an erroneous determination that the condition is benign, hopeless or not serious, or that the treatment available is unreliable or as painful as the condition do not rise to the level of constitutional violations. See Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000).

Pocevic alleges that his kidney stones caused him constant pain.  In addition, he was provided treatment for this condition.  Thus, the court will assume, for purposes of this ruling, that Pocevic's medical condition was serious.

To establish a genuine issue of material fact regarding the second component of the deliberate indifference test, Pocevic must present evidence demonstrating that defendants were aware of and deliberately disregarded a serious risk to Pocevic's health.  He has not done so.

1.      Dr. Tung

Pocevic contends that defendant Dr. Tung was deliberately indifferent to his kidney stone

pain because Dr. Tung did not seek approval for an ESWL and prescribe appropriate pain medication.

Pocevic's medical records indicate that approval for a urology consult and ESWL was sought only after Pocevic experienced constant pain for two weeks.  Pocevic did not object to ¶100 of defendants' Local Rule 56(a)1 Statement which noted that, previously, Pocevic had experienced only intermittent pain; November 2004 was the first time Pocevic reported to medical staff that he experienced constant pain.  Nowhere in the medical records, which were supplied by Pocevic, is there any reference to an extended period during which Pocevic complained of constant pain from kidney stones.  Dr. Tung treated Pocevic from June 27, 2003, through August 19, 2004.  Medical records for that period indicate that Pocevic complained to Dr. Tung about pain or discussed his history of kidney stones only six times, on July 21, 2003, August 4, 2003, December 30, 2003, March 29, 2004, May 24, 2004 and June 10, 2004.  Even if the court were to credit Pocevic's statements in his affidavit that he complained of kidney stone pain every time he saw Dr. Tung, there is no evidence submitted of a continuous period of pain. The medical records indicate that Dr. Tung examined Pocevic eighteen times, on June 27, 2003, July 2, 2003, July 21, 2003, July 28, 2003, August 4, 2003, August 18, 2003, August 25, 2003, September 22, 2003, October 20, 2003, November 20, 2003, December 22, 2003, December 30, 2003, February 9, 2004, March 22, 2004, March 29, 2004, April 7, 2004, May 24, 2004, and June 10, 2004.  Eighteen isolated complaints of pain over a fifteen month period is insufficient to demonstrate that Pocevic experienced constant kidney stone pain at any time while Dr. Tung was his treating physician.

Both Drs. Tung and Blanchette also state in their affidavits that a patient suffers severe pain from kidney stones only when a stone enters the ureter. X-rays taken in May 2003 and September 2004 indicate that Pocevic's large kidney stones remained in his kidneys. In addition, the medical records repeatedly state that Pocevic was able to walk normally, which would not be possible if Pocevic had been experiencing pain at the level of severity he now describes.

After considering the evidence presented by the parties, the court concludes that Pocevic has demonstrated only a difference of opinion regarding treatment. As indicated above, disagreements about treatment, such as the need for and timing of referral to a specialist, do not constitute deliberate indifference to a serious medical need. See Sond, 151 F. Supp. 2d at 312. The court concludes that Pocevic has failed to present evidence in opposition to the motion for summary judgment demonstrating a genuine issue for trial regarding deliberate indifference to a serious medical need. Defendants' motion for summary judgment is granted as to the claims against defendant Dr. Tung.

### 2.  Joan Dobson and Fred Watton

Pocevic alleges that defendants Dobson and Watton were deliberately indifferent to his serious medical need because they were aware that Dr. Tung failed to provide the constitutionally required medical care but failed to inform their supervisors or obtain proper medical care for him through unofficial channels. Because the court has determined above that Pocevic failed to meet his burden of demonstrating that Dr. Tung was deliberately indifferent to his medical needs, his claims against defendants Dobson and Watton necessarily fail. Defendants' motion for summary

judgment is granted as to the claims against defendants Dobson and Watton for deliberate indifference to Pocevic's serious medical need.

      B.     <u>Failure to Comply with Grievance Procedures</u>

Pocevic also alleges that Dobson and Watton failed to comply with the institutional grievance procedures because defendant Dobson included false statements in her response and defendant Watton failed to reply to the level 2 grievance in a timely manner.

Department of Correction Administrative Directive 9.6 governs the inmate grievance procedure. See www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf. The directive governs inmate access to grievance forms and describes the procedure for timely resolution of grievances. Pocevic's claim that defendant Watton filed to comply with these procedures is not cognizable.

"A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." <u>Levine v. Torvik</u>, 986 F.2d 1506, 1515 (6th Cir. 1993)(citing <u>Engle v. Isaac</u>, 456 U.S. 107 (1982)), <u>overruled in part on other grounds by</u> <u>Thompson v. Keohane</u>, 516 U.S. 99, 111 (1995). This district has previously applied the reasoning of the Sixth Circuit to hold that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right. See <u>Ruocco v. Tung</u>, No. 3:02cv1443(DJS), 2004 WL 721716, at *14 (D. Conn. Mar 30, 2004); <u>Hunnicutt v. Armstrong</u>, 305 F. Supp. 2d 175, 188 (D. Conn. 2004) (grievance procedure).

15

Pocevic contends that defendant Watton's failure to timely respond to his level 2 grievance prevented him from being able to exhaust his administrative remedies, a prerequisite to filing this case.  Pocevic has, however, filed this action and defendants have not argued that he failed to exhaust his administrative remedies.  The court can discern no federally or constitutionally protected right that was violated by defendant Watton's failure to comply with the institutional procedures regarding the timing of his response to Pocevic's level 2 grievance.  Thus, Pocevic's claim for violation of state grievance procedures is not cognizable in this action.  Defendants' motion for summary judgment is granted as to this claim against defendant Watton.

Pocevic challenges the accuracy of defendant Dobson's response to his level 1 grievance and has attached to his complaint an April 23, 2003 grievance with a response from defendant Dobson.  In his deposition, Pocevic states that he had no other written communication with defendant Dobson other than the one grievance attached to his complaint.  (See Pl.'s Deposition, Doc. #34, Ex. M at 57.)  In the grievance, Pocevic stated that the nurse on duty refused him pain medication and did not inform anyone of his complaints of pain.  In her response, defendant Dobson states that Pocevic's medical records indicate that he refused to provide the nurse a urine sample on April 23, 2003.  Once he provided the sample, the on-call doctor prescribed Motrin and Vistaril.  She then stated that the grievance was compromised because the on-call doctor prescribed medication for pain after providing the urine sample.

Pocevic's medical records indicate that at 4:30 p.m., he asked the nurse for Motrin for a headache.  The medication was provided.  At 8:00 p.m., Pocevic told the nurse that he was in pain since the night before and asked the nurse to call the doctor.  At the same time that he made

16

this request, Pocevic handed the nurse the emergency grievance. The nurse contacted her supervisor who, in turn, contacted the on-call doctor. Pocevic did not provide the urine sample ordered by the doctor until 10:30 p.m. After the urine was tested, Pocevic received the prescribed medication. (See Pl.'s Medical Records, Doc. #34, Ex. B at 39-40.). The medical records show that Pocevic requested medication for kidney stone pain at the same time he submitted the grievance complaining that medication had been denied. Pocevic has provided no objective evidence supporting his argument that defendant Dobson included false statements in the grievance response. Accordingly, defendants' motion for summary judgment is granted as to the claim against defendant Dobson regarding the grievance response.

IV.     Conclusion

Defendants' motion for summary judgment [**doc. #27**] is **GRANTED.** The Clerk is directed to enter judgment in favor of defendants and close this case.

**SO ORDERED** this 14th day of March, 2006, at Hartford, Connecticut.

/s/ CFD
CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE